1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   JOSEPH AND LINDA BOESSENECKER,          No. C 13-491 MMC

13              Plaintiffs,                    **ORDER GRANTING IN PART AND**
         v.                                    **DENYING IN PART DEFENDANT'S**
14   JPMORGAN CHASE BANK,                      **MOTION TO DISMISS**

15              Defendant.

16   _____/

17        Before the Court is defendant's motion, filed May 16, 2013, to dismiss the above-

18   titled action.  Plaintiffs have filed opposition, to which defendant has replied.  Having read

19   and considered the papers filed in support of and in opposition to the motion, the Court

20   hereby rules as follows.[1]

21                            **BACKGROUND**[2]

22        On August 3, 2007, Plaintiffs purchased a home in Livermore, California; defendant

23   provided the original loan for the purchase of the property.  (See Compl. ¶¶ 7-8.)  On April

24   14, 2010, plaintiffs and defendant finalized a refinancing of plaintiffs' loan.  (See Compl.

25   ¶¶ 8-9.)  Plaintiffs "closed out the initial loan" and, on April 27, 2010, "received a letter from

26

27        [1] By order filed July 23, 2013, the Court deemed the matter suitable for decision on
28   the parties' written submissions and vacated the hearing set for July 26, 2013.

          [2] The following facts are taken from the complaint.

1   [defendant] that the loan was paid in full on April 20, 2010." (See Compl. ¶¶ 9-10.)  On July

2   9, 2010, however, plaintiffs received a letter from defendant, informing them that they owed

3   $5176 "due to 'shortage' in pay off amount."  (See Compl. ¶ 11.)  Plaintiffs sent letters and

4   emails to defendant, requesting an explanation and clarification; on August 4, 2010,

5   plaintiffs received an email stating the shortage "pertain[ed] to an internal issue regarding

6   the payoff amount that [defendant] confirmed during the refinancing," but were told to "not

7   be alarmed" and that they would "not be negatively impacted."  (See Compl. ¶ 16.)

8           Thereafter, on August 26, 2010, plaintiffs received a letter from defendant, stating

9   "the payoff in March was short by $3672.81."  (See Compl. ¶ 19 & Ex. M.)  Plaintiffs again

10  contacted defendant to request an explanation, and defendant, on September 8, 2010,

11  informed plaintiffs the $5176.81 shortage "pertained to an insurance disbursement" that

12  "has been resolved" and that the $3672.81 shortage occurred because the tax department

13  had "overpaid [the] county" and was awaiting a refund.  (See Compl. ¶ 23 & Ex. O.)  In a

14  subsequent email the same date, defendant informed plaintiffs it might have to take the

15  funds out of the escrow account maintained for the refinanced loan, requiring plaintiffs "to

16  increase [their] monthly payment in order to recover the escrow shortage."  (See Compl.

17  ¶ 25 & Ex. Q.)  On September 9, 2010, plaintiffs "requested a reconciliation and closure of

18  the issue."  (See Compl. ¶ 27.)

19          Plaintiffs received no communication from defendant until May 2, 2011, when they

20  received a letter stating their "mortgage payments were increasing by $465.00 due to 'an

21  impound shortage.'"  (See Compl. ¶ 28.)  Plaintiffs called defendant and were informed that

22  "the increase was due to a 'shortage in the escrow account.'"  (See Compl. ¶ 28.)

23  Throughout the month of May, plaintiffs contacted defendant several times, but did not

24  receive an explanation that allowed them to "understand what was happening with the

25  loan."  (See Compl. ¶¶ 28-36.)  "[H]aving no further information on their account, and

26  receiving no assistance from [defendant], [plaintiffs] continued to make their increased

27  monthly mortgage payments to avoid credit problems."  (See Compl. ¶ 35.)

28

2

1    Nearly one year later, on May 22, 2012, defendant informed plaintiffs their monthly

2  mortgage payment was decreasing by $320.80 per month.  (See Compl. ¶ 37.)  Plaintiffs

3  again requested a reconciliation of the account, but did not receive one.  (See Compl.

4  ¶ 37.)  On two separate thereafter, plaintiffs sent, through counsel, a Qualified Written

5  Request ("QWR") to defendant.  (See Compl. ¶¶ 38, 44.)  Defendant did not include the

6  requested information in its response to the first and did not respond to the second.  (See

7  Compl. ¶¶ 43, 47.)

8    As of the time of the filing of the above-titled action, plaintiffs "ha[d] not received a

9  response regarding their refinanced loan" and "ha[d] received no closure regarding whether

10  or not their loan is paid in full, or if they owe any money, why their payments increased,

11  then decreased."  (See Compl. ¶ 48.)  "During the time [p]laintiffs were trying to determine

12  what was happening with their loan, the interest rates reached a historic low"; "[p]laintiffs

13  wanted to refinance their loan to capture these low rates and reduce their monthly

14  payments, but could not understand what was happening with the loan so did not do so."

15  (See Compl. ¶ 36.)

16    On February 4, 2013, plaintiffs filed the above-titled action, alleging the following

17  seven causes of action:  "RESPA Violation" (First Cause of Action); "Violation of California's

18  Unfair Competition Law" (Second Cause of Action); "Negligence" (Third Cause of Action);

19  "Negligent Infliction of Emotional Distress" (Fourth Cause of Action); "Intentional Infliction of

20  Emotional Distress" (Fifth Cause of Action); "Declaratory Relief" (Sixth Cause of Action);

21  and "California Rosenthal Act" (Seventh Cause of Action).

22                              **LEGAL STANDARD**

23    Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

24  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

25  cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

26  1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

27  showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

28

544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

**A.  Real Estate Settlement Procedures Act ("RESPA")**

RESPA, 12 U.S.C. §§ 2601 et seq., requires a mortgage loan servicer, after receiving a QWR from a borrower, to "provide the borrower with a written explanation or clarification that includes information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."  See 12 U.S.C. § 2605(e)(2)(C)(i).  As noted, plaintiffs allege they sent two QWRs to defendant. With respect to the first, sent August 6, 2012, plaintiffs allege defendant responded but did not provide the requested information.  (See Compl. ¶ 55.)  With respect to the second, sent November 20, 2012, plaintiffs allege defendant provided no response.  (See Compl. ¶¶ 56-58.)

Defendant argues plaintiffs' claim must be dismissed for the asserted reason that it "is premised on the allegation that [defendant] failed to respond to their QWR"; defendant

4

1   points out that the complaint itself shows defendant responded on October 29, 2012.  (See

2   Mot. at 2:25; Compl. Ex. Z.)  Defendant, however, does not address plaintiffs' allegation

3   that, on November 20, 2012, plaintiffs sent a second QWR, to which defendant allegedly

4   did not respond.  Further, plaintiffs do not allege there was no response to their first QWR,

5   but, rather, that defendant's response was legally inadequate.  (See Compl. ¶ 55 (noting

6   defendant "only provided some information, but not all").

7        Defendant next argues plaintiffs' claim is subject to dismissal for the reason that

8   plaintiffs have not alleged a pecuniary loss.  Pursuant to RESPA, "whoever fails to comply

9   with any provision [of § 2605], shall be liable to the borrower for each such failure . . . in an

10  amount equal to the sum of any actual damages to the borrow as a result of the failure."

11  See 12 U.S.C. § 2605(f)(1)(B).  Consequently, to state a claim under RESPA, a plaintiff

12  must allege the defendant's failure to comply resulted in an actual pecuniary loss.  See

13  Allen v. United Fin. Mortgage Corp., 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  Here,

14  plaintiffs allege that as a result of defendant's failure to respond to their QWRs, they "have

15  not been able to refinance their loan to take advantage of the low interest rates and save

16  thousands per year on their mortgage payments."  (See Compl. ¶ 50.)  Such allegation is

17  sufficient to plead actual damages.  See, e.g., Hutchinson v. Delaware Sav. Bank FSB, 410

18  F. Supp. 2d 374, 383 (D.N.J. 2006) (holding plaintiffs sufficiently pleaded actual damages

19  where they alleged "they suffered 'negative credit ratings on their credit reports and the

20  inability to obtain and borrow another mortgage loan and other financing'").

21       Accordingly, plaintiffs' First Cause of Action is not subject to dismissal.

22  **B. California's Unfair Competition Law**

23       Plaintiffs allege defendant has violated California's Unfair Competition Law, Cal.

24  Bus. & Prof. Code §§ 17200 et seq., by violating RESPA as discussed above.  (See Compl.

25  ¶¶ 63-67.)  "By proscribing 'any unlawful business practice,' section 17200 borrows

26  violations of other laws and treats them as unlawful practices that the unfair competition law

27  makes independently actionable."  See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular

28

5

1   Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotation and citation omitted).

2       Defendant argues plaintiffs lack standing to bring a § 17200 claim for the asserted

3   reason that they "do not allege that they have suffered any actual harm."  (See Mot. at 4:3);

4   Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011) (holding, to satisfy standing

5   under § 17200, "a party must . . . (1) establish a loss or deprivation of money or property

6   sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic

7   injury was the result of, i.e., caused by, the unfair business practice or false advertising that

8   is the gravamen of the claim").  Defendant further argues plaintiffs' claim must be

9   dismissed for the asserted reason that plaintiffs fail to state a claim for a RESPA violation,

10  and, consequently, fail to allege an unlawful business practice.  As discussed above,

11  however, plaintiffs have sufficiently alleged both a cognizable pecuniary loss and a claim

12  under RESPA.

13      Accordingly, plaintiffs' Second Cause of Action is not subject to dismissal.

14  **C. Negligence and Negligent Infliction of Emotional Distress**

15      Plaintiffs allege defendant was negligent in its servicing of their loan, the refinancing

16  of their loan, and in its failure to provide adequate information.  (See Compl. ¶¶ 70-71, 73.)

17  Defendant argues plaintiffs have failed to plead facts showing it owed plaintiffs any duty of

18  care.

19       "As a general rule, a financial institution owes no duty of care to a borrower when

20  the institution's involvement in the loan transaction does not exceed the scope of its

21  conventional role as a mere lender of money."  See Nymark v. Heart Fed. Sav. & Loan

22  Assn., 231 Cal. App. 3d 1089, 1096 (1991).  "Liability to a borrower for negligence arises

23  only when the lender actively participates in the financed enterprise beyond the domain of

24  the usual money lender."  Id.  In this instance, plaintiffs base their claims on allegedly

25  negligent conduct occurring in the ordinary course and scope of defendant's participation in

26  the loan transaction.  See Castaneda v. Saxon Mortgage Servs., Inc., 687 F. Supp. 2d

27  1191, 1198 (E.D. Cal. 2009) (holding, "absent special circumstances a loan transaction is

28

6

1    at arms-length and no duties arise from the loan transaction outside of those in the

2    agreement") (internal quotation and citation omitted).  Put another way, plaintiffs have not

3    alleged defendant acted in any manner outside or "beyond the domain of the usual money

4    lender."  See Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850, 864 (1968) (holding

5    defendant owed plaintiff duty of care where it "became much more than a lender content to

6    lend money at interest on the security of real property" and "became an active participant in

7    a home construction enterprise" with "the right to exercise extensive control of the

8    enterprise").

9           Accordingly, plaintiffs' Third and Fourth Causes of Action are subject to dismissal.

10   **D.   Intentional Infliction of Emotional Distress**

11          Plaintiffs' claim of intentional infliction of emotional distress alleges defendant's

12   above-described actions "have resulted in [p]laintiffs suffering severe humiliation, mental

13   anguish, and emotional, physical and economic distress, and they have been injured in

14   mind and body."  (See Compl. ¶ 82.)

15          To state a claim for intentional infliction of emotional distress, a plaintiff must allege

16   facts demonstrating "(1) extreme and outrageous conduct by the defendant with the

17   intention of causing, or reckless disregard of the probability of causing, emotional distress;

18   (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

19   proximate causation of the emotional distress by the defendant's outrageous conduct."

20   See Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).  "Conduct to be outrageous

21   must be so extreme as to exceed all bounds of that usually tolerated in a civilized

22   community."  See id. (internal quotation and citation omitted).  "Generally, conduct will be

23   found to be actionable where the recitation of the facts to an average member of the

24   community would arouse his resentment against the actor, and lead him to exclaim,

25   'Outrageous!'"  McMahon v. Craig, 176 Cal. App. 4th 1502, 1515-16 (2009) (internal

26   quotation and citation omitted).

27          Defendant argues plaintiffs have failed to plead extreme and outrageous conduct.

28

7

1   The Court agrees.  Although defendant, for several years, allegedly failed to give plaintiffs

2   any certainty regarding the state of their loan, plaintiffs have not alleged facts that would

3   make an average member of the community exclaim, "Outrageous!"  See, id.; see also

4   Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010)

5   (dismissing claim for intentional infliction of emotional distress where no showing defendant

6   acted in bad faith in foreclosing on plaintiff's home).

7          Accordingly, plaintiffs' Seventh Cause of Action is subject to dismissal.

8   **E.  Declaratory Relief**

9          Defendant argues plaintiffs have failed to state a claim for declaratory relief, for the

10  asserted reason that plaintiffs have failed to allege the existence of an actual controversy

11  and, alternatively, because each of plaintiffs' underlying claims assertedly fails.  As

12  discussed above, however, plaintiffs allege defendant has overcharged plaintiffs based on

13  an error made by defendants; plaintiffs seek a declaration as to the parties' "respective

14  rights and duties" in that regard (see Compl. ¶¶ 25-27, 93-94), and, further, as discussed

15  above and as set forth below, plaintiffs have sufficiently stated claims for which relief can

16  be granted.

17         Accordingly, plaintiffs' Sixth Cause of Action is not subject to dismissal.

18  **F.  Rosenthal Fair Debt Collection Practices Act ("RFDCPA")**

19         Plaintiffs allege defendant has violated the RFDCPA, Cal. Civ. Code §§ 1788.1 et

20  seq., by "falsely stating the amount of a debt; increasing the amount of a debt by including

21  amounts that are not permitted by law or contract; and using unfair and unconscionable

22  means in an attempt to collect a debt."  (See Compl. ¶ 101.)  The RFDCPA prohibits "debt

23  collector[s]" from using certain practices.  See, e.g., Cal. Civ. Code § 1788.10 (prohibiting

24  use of threats);  id. § 1788.13 (prohibiting misrepresentations in communications with

25  debtors).  "Debt collector" is defined as "any person who, in the ordinary course of

26  business, regularly, on behalf of himself or herself or others, engages in debt collection."

27  Cal. Civ. Code § 1788.2(c).  "Debt collection" is defined as "any act or practice in

28

8

1   connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b). "Consumer

2   debt" is defined as "money, property or their equivalent, due or owing or alleged to be due

3   or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code

4   § 1788.2(f). A "consumer credit transaction" is, in turn, defined as "a transaction between a

5   natural person and another person in which property, services or money is acquired on

6   credit by that natural person from such other person primarily for personal, family, or

7   household purposes." Cal. Civ. Code § 1788.2(e). Defendant contends plaintiffs fail to

8   state a claim under the RFDCPA.

9       In asserting plaintiffs fail to state a claim, defendant, citing Gamboa v. Tr. Corps, No.

10  09-0007, 2009 WL 656285 (N.D. Cal. Mar. 12, 2009), first argues its communications with

11  plaintiffs regarding their residential home loan do not qualify as "debt collection." The issue

12  in Gamboa, however, was whether a claim under the RFDCPA can be based on a

13  foreclosure. See id. (holding "foreclosing on a property pursuant to a deed of trust is not a

14  debt collection within the meaning of the RFDCPA"). Here, by contrast, plaintiffs' claim is

15  based on conduct other than a foreclosure, and, consequently, defendant's reliance on

16  Gamboa is unavailing. See Walters v. Fid. Mortgage of CA, 730 F. Supp. 2d 1185, 1203

17  (E.D. Cal. 2010) (holding allegations that defendant engaged in pattern of improper conduct

18  in course of servicing loan sufficient to plead debt collection under RFDCPA).

19      Defendant next cites to several district court decisions holding a home loan does not

20  constitute "consumer debt" under the RFDCPA. See, e.g., Dunfee v. Truman Capital

21  Advisors, No. 12-1925, 2013 WL 1285152 (S.D. Cal. Mar. 25, 2013). Other district courts,

22  however, have not so found, see, e.g., Walters, 730 F. Supp. 2d at 1203-04 (holding,

23  where defendant allegedly violated RFDCPA in servicing plaintiff's mortgage loan, plaintiff

24  had sufficiently made out claim under RFDCPA), and as one such court has observed,

25  "[n]othing in the plain meaning of [the] statutory definition [of "consumer debt"] suggests

26  that a mortgage, which is money owing to a person . . . , is outside the purview of the

27  RFDCPA." See Roche v. Bank of Am., Nat. Ass'n, No. 12-2002, 2013 WL 3450016 at *6

28

9

(S.D. Cal. July 9, 2013) (denying motion to dismiss RFDCPA claim); see also Lee v.
American Brokers Conduit, No. RG12622175, 2013 WL 3153857 (Superior Ct., Alameda
Cnty, Ca. March 5, 2013) (noting absence of California case authority addressing issue;
acknowledging disparate findings among district courts; declining to dismiss RFDCPA claim
against mortgage servicer).

Moreover, the RFDCPA is patterned on the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. §§ 1962 et seq., which defines "debt" in language similar to that used
in the RFDCPA, see 15 U.S.C. § 1692a (defining debt as "any obligation or alleged
obligation of a consumer to pay money arising out of a transaction in which the money,
property, insurance, or services which are the subject of the transaction are primarily for
personal, family, or household purposes, whether or not such obligation has been reduced
to judgment"), and the federal courts of appeals that have addressed the issue have found
the FDCPA is applicable to mortgage loans.  See, e.g., Reese v. Ellis, Painter, Ratterree &
Adams, LLP, 678 F.3d 1211, 1217-18 (11th Cir. 2012) (holding mortgage lender's allegedly
dunning letter constituted debt collection; noting "[a] debt is still a 'debt' even if it is
secured"); Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 386 (7th Cir. 2010) (holding
communication attempting to collect on defaulted home loan "qualifies as a communication
in connection with an attempt to collect a debt"); Wilson v. Draper & Goldberg, P.L.L.C.,
443 F.3d 373, 376 (4th Cir. 2006) (holding mortgage constitutes debt under FDCPA).

Accordingly, the Seventh Cause of Action is not subject to dismissal.

//

//

/

//

//

//

//

10

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1.  To the extent the motion seeks dismissal of the Third, Fourth, and Fifth Causes of Action, the motion is hereby GRANTED, and the Third, Fourth, and Fifth Causes of Action are DISMISSED, with leave to amend.

2.  In all other respects the motion is DENIED.

3.  Plaintiffs amended complaint, if any, shall be filed no later than August 16, 2013.

**IT IS SO ORDERED.**

Dated: July 24, 2013

MAXINE M. CHESNEY
United States District Judge

11